IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, : : : : Plaintiff, : : : CIVIL ACTION NO. v. : : WASTE INDUSTRIES U.S.A., LLC, : TRANSWASTE SERVICES, LLC, : JURY TRIAL DEMAND WASTE INDUSTRIES ATLANTA, LLC,: and GFL ENVIRONMENTAL, INC. : : : Defendants. : _____ : | |

## COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Christine M. Ladd ("Ladd") and a class of female job applicants who were adversely affected by such practices. The Equal Employment Opportunity Commission ("EEOC") alleges that Waste Industries U.S.A., LLC ("Waste Industries USA"), TransWaste Services LLC ("TransWaste"), Waste Industries Atlanta, LLC ("Waste Industries Atlanta"), and GFL Environmental, Inc. ("GFL") (collectively, "Defendants") engaged in a pattern or

practice of unlawful discrimination by denying female job applicants truck driver positions at its facilities on the basis of their sex in violation of Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3. The EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Waste Industries USA has continuously been a corporation doing business in the State of Georgia and has continuously maintained at least 15 employees.

5. At all relevant times, Defendant Waste Industries USA has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant TransWaste has continuously been a corporation doing business in the State of Georgia and has continuously maintained at least 15 employees.

7. At all relevant times, Defendant TransWaste has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

8. At all relevant times, Defendant Waste Industries Atlanta has continuously been a corporation doing business in the State of Georgia and has continuously maintained at least 15 employees.

9. At all relevant times, Defendant Waste Industries Atlanta has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

10. At all relevant times, Defendant GFL has continuously been a corporation doing business in the State of Georgia and has continuously maintained at least 15 employees.

11. At all relevant times, Defendant GFL has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

12. Upon information and belief, Defendants TransWaste and Waste Industries Atlanta maintain branch locations in Georgia in the cities of Albany, Americus, Augusta, Cedartown, Conyers, Douglas, Douglasville, Fairburn, Stockbridge, Thomaston, and Warner Robins.

13. Upon information and belief, Defendant Waste Industries USA is the parent company of Defendants TransWaste and Waste Industries Atlanta.

14. Upon information and belief, Defendants TransWaste and Waste Industries Atlanta are wholly owned subsidiaries of Waste Industries USA.

15. Upon information and belief, Defendant Waste Industries USA maintains centralized control of labor relations with its subsidiaries.

16. Upon information and belief, Defendant Waste Industries USA maintains a shared employee handbook with its subsidiaries.

17. Upon information and belief, Defendant Waste Industries USA maintains shared policies and procedures for employment practices with its subsidiaries.

18. Upon information and belief, Defendant Waste Industries USA maintains shared human resources employees with its subsidiaries.

19. Upon information and belief, Defendant Waste Industries USA created and maintained job descriptions for its subsidiaries.

20. Upon information and belief, Defendant Waste Industries USA posted job openings on behalf of its subsidiaries.

21. Upon information and belief, Defendant Waste Industries USA provides payroll and other administrative functions for its subsidiaries.

22. Defendants Waste Industries USA, TransWaste, and Waste Industries Atlanta have interrelated operations, common management and financial control, and centralized control of labor relations.

23. Defendants Waste Industries USA, TransWaste, and Waste Industries Atlanta are so integrated with respect to ownership and operations so as to constitute a single or integrated employer for purposes of Title VII.

24. Upon information and belief, Defendant GFL merged with Defendant Waste Industries USA and continued its business operations.

25. Defendant GFL and Defendants Waste Industries USA, TransWaste, and Waste Industries Atlanta have interrelated operations, common management and financial control, and centralized control of labor relations.

26. Defendant GFL and Defendants Waste Industries USA, TransWaste, and Waste Industries Atlanta are so integrated with respect to ownership and operations so as to constitute a single or integrated employer for purposes of Title VII.

27. Moreover, because of the continuity of business operations, Defendant GFL is Defendants Waste Industries USA, TransWaste, and Waste Industries Atlanta's successor in interest for purposes of Title VII.

## ADMINISTRATIVE PROCEDURES

28. More than thirty days prior to the institution of this lawsuit, Ladd filed a Charge of Discrimination with the EEOC alleging violations of Title VII by Defendants.

29. On February 23, 2022, the EEOC issued to Defendants a Letter of Determination on the charge filed by Ladd and on behalf of similarly situated female applicants finding reasonable cause to believe that Title VII had been violated and inviting them to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and to provide appropriate relief.

30. The EEOC engaged in communications with Defendants to provide them with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

31. The EEOC was unable to secure from Defendants a conciliation agreement acceptable to the EEOC.

32. On September 23, 2022, the EEOC issued to Defendants a Notice of Failure of Conciliation.

33. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

34. Defendants are engaged in the business of solid waste removal, recycling pickup, and landfill operation services.

35. Defendants employ truck drivers at each branch location in Georgia to provide solid waste, recycling pickup and transportation services.

36. Defendants' drivers operate trucks to collect solid waste, recycling, or cardboard along a specified collection route, and to deliver the collected solid waste, recycling, or cardboard to the appropriate disposal site.

37. Defendants hire for several truck driver positions including Residential Driver, Roll-Off Driver, Front Load FEL Driver, Swing Driver, and Lead Driver.

38. The Residential Driver position is an entry level position that requires a valid Commercial Driver's License ("CDL") license and at least one year of driving experience.

39. The Roll-Off Driver position requires a valid CDL license and at least two years of driving experience.

40. The Front Load FEL Driver, Swing Driver, and Lead Driver positions require a valid CDL license and at least 3 years of driving experience.

41. Defendants always have open driver positions due to high turnover.

42. Defendants' hiring process is uniform across all branch locations in Georgia.

43. Defendants' Human Resources employees post Defendants' open driver positions in Lucero, a CareerBuilder product.

44. Job applicants are encouraged to apply for positions online.

45. Prior to February 2020, a walk-in job applicant, who had not completed an application online, was given a paper application to complete.

46. Paper applications were retained by the branch location where it was received for 3-6 months.

47. After February 2020, most job applicants applied for positions online.

48. If a job applicant meets the minimum qualifications for the position, as verified by human resources, the application is forwarded to the hiring managers at the branch locations where there is a vacancy looking to be filled.

49. If the applicant appears qualified for the position, an initial phone interview is conducted.

50. If the phone interview goes well, the applicant is called into the branch location for an in-person interview.

**Ladd Facts**

51. Beginning in or around July 2018, Ladd submitted several online applications for driver positions with Defendants.

52. In or around September 2018, Ladd submitted an online application for a Front Load Driver position at Defendants' Stockbridge, Georgia location.

53. At the time of her application, Ladd had a valid CDL license and over five years of experience as a truck driver.

54. On or about October 2, 2018, Defendants' Operations Manager at its Fairburn, Georgia branch location interviewed Ladd for the position.

55. At the beginning of the interview, with no prompting or context, the Operations Manager told Ladd that the opening was a "man fill" and asked her "Why would you want a man's job?"

56. Ladd told the Operations Manager that she was qualified and had the experience to do the job.

57. The Operations Manager told Ladd that she "was taking a job away from a man."

58. The Operations Manager then claimed that he could not find Ladd's application in Defendants' computer system and gave her a paper application to complete.

59. The Operations Manager instructed Ladd to complete a paper application and send it to him; he provided Ladd with a fax number and telephone number.

60. Ladd was unable to fax her job application to the fax number provided by the Operations Manager.

61. Thereafter, Ladd left telephone messages for the Operations Manager but did not receive a return phone call or other communication from him or anyone else about her application for a driver position.

62. After her interview, Ladd attempted to apply online for open driver positions advertised by Defendants but was unable to apply because Defendants' online application system indicated that Ladd already had an application on file.

63. Upon information and belief, Defendants offered a less qualified male applicant the Front Load Driver position that Ladd interviewed for.

**Applicant Class Facts**

64. Upon information and belief, there is a class of female applicants ("Applicant Class") who applied for driver positions at several of Defendants' branch locations.

65. Upon information and belief, during the interview process for a driver position, the Applicant Class was subjected to discriminatory lines of questioning about their ability, as women, to do the job.

66. During the interview process, the Applicant Class was asked if they could lift the trash bins and handle the strong odors and getting dirty.

67. During the interview process, the Applicant Class was asked if they could do the job since they seemed "prissy, like girly girls."

68. During the interview process, the Applicant Class was told their appearance would distract men from doing their jobs, including one female applicant who was called the "girl with the big booty."

69. Upon information and belief, Defendants hired less qualified male applicants for the driver positions sought by the Applicant Class.

70. Upon information and belief, Defendants' hiring process has resulted in statistically significant hiring shortfalls for females in driver positions.

## STATEMENT OF CLAIMS

### Pattern or Practice of Sex Discrimination

71.     Since at least January 1, 2016, Defendants have engaged in unlawful employment practices at its facilities in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by subjecting Ladd and the Applicant Class to unlawful discrimination in hiring on the basis of sex.

72.     The EEOC realleges and incorporates by reference the allegations set forth in paragraphs 1 through 71 as if fully asserted herein.

73.     Defendants have, and continue to, engage in a pattern or practice of discrimination, in violation of Title VII, designed to exclude qualified women from its driver positions and maintain a male-dominated workforce of drivers.

74.     Defendants have maintained, and continue to maintain, a hiring process for the driver positions through which Defendants have intentionally denied employment opportunities to qualified female job applicants in favor of less qualified male applicants.

75.     Defendants' discriminatory hiring process adversely impacts women applying for driver positions with Defendants because of their sex.

76.     The effect of the practices complained of above has been to deprive Ladd and the Applicant Class of equal employment opportunities on the basis of sex.

77. The unlawful employment practices complained of above were and are intentional.

78. The unlawful employment practices complained of above were and are done with malice or reckless indifference to the federally protected rights of Ladd and the Applicant Class.

## PRAYER FOR RELIEF

**WHEREFORE,** the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all persons in active concert or participation with Defendants, from engaging in any employment practices that discriminate against female job applicants based on their sex, by subjecting them to different terms and conditions of employment and failing to hire them into positions for which they are qualified based on their sex.

B. Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities to female job applicants and employees and eradicate the effects of Defendants' past and present unlawful employment practices.

C. Order Defendants to make Ladd and the Applicant Class whole, by providing appropriate back pay with prejudgment interest, in amounts to be

determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

D.     Order Defendants to make Ladd and the Applicant Class whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.     Order Defendants to make Ladd and the Applicant Class whole, by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including but not limited to, emotional pain and suffering, loss of enjoyment of life, inconvenience, anxiety, stress, and humiliation, in amounts to be determined at trial.

F.     Order Defendants to pay punitive damages to Ladd and the Applicant Class for Defendants' malicious and/or reckless conduct described above, in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the EEOC its costs in this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 21st day of September, 2023.

        EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

        GWENDOLYN Y. REAMS
        Acting General Counsel

        MARCUS KEEGAN
        Regional Attorney, Atlanta District

        LAKISHA DUCKETT ZIMBABWE
        Assistant Regional Attorney, Atlanta District

        /s/ *Veronica R. Cox*
        Veronica R. Cox
        Trial Attorney
        Georgia Bar No. 712154
        U.S. Equal Employment Opportunity Commission
        Atlanta District Office
        100 Alabama St., SW, Suite 4R30
        Atlanta, GA 30303
        veronica.rogusky.cox@eeoc.gov
        (470) 531-4837 (Telephone)
        (404) 562-6905 (Facsimile)

        /s/ *Meeta Dama*
        Meeta Dama
        Trial Attorney
        Georgia Bar No. 398137

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
[meeta.dama@eeoc.gov](mailto:meeta.dama@eeoc.gov)
(470) 531-4852 (Telephone)
(404) 562-6905 (Facsimile)