IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Plaintiff,

     v.

WASTE INDUSTRIES U.S.A., LLC,
TRANSWASTE SERVICES, LLC,
WASTE INDUSTRIES ATLANTA,
LLC, and GFL ENVIRONMENTAL,
INC.,

     Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-04293-JPB-JEM

UNITED STATES MAGISTRATE JUDGE'S
NON-FINAL REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss. (Doc. 16.) For the following reasons, the Court **RECOMMENDS** that Defendant's Motion to Dismiss, (Doc. 16), be **DENIED**.

I.    **INTRODUCTION**

    A.    **Factual Background**

Defendants are in the business of solid waste removal, recycling pickup, and landfill operation services. (Doc. 13, First Amended Complaint, "FAC," ¶ 34.) Defendants operate several branch locations in Georgia and employ various types of truck drivers at each to provide solid waste, recycling pickup, and transportation services. (FAC ¶¶ 35, 37.) Defendants always have open

driver positions due to high turnover, and its hiring process is uniform across all branches in Georgia. (FAC ¶¶ 41-42.) Job applicants are encouraged to apply online. (FAC ¶ 44.) If a job applicant meets the minimum qualifications for the position, as verified by human resources, then the application is forwarded to the hiring managers at the branch(es) where a vacancy must be filled. (FAC ¶ 48.) If the applicant appears qualified for the position, then the applicant has an initial phone interview. (FAC ¶ 49.) If the phone interview goes well, then the applicant is called into the branch for an in-person interview. (FAC ¶ 50.)

The main thrust of the Complaint is Christine Ladd's experience with Defendant's hiring process. In July 2018, Ladd submitted several online applications for driver positions with Defendants. (FAC ¶ 51.) In September 2018, Ladd submitted an online application for a Front Load Driver position at Defendants' Stockbridge, Georgia branch. (FAC ¶ 52.) This position requires a valid Commercial Driver's License ("CDL") and at least three years of driving experience. (FAC ¶ 40.) At the time of her application for that position, Ladd had a valid CDL and more than five years of experience as a truck driver. (FAC ¶ 53.) On October 2, 2018, Ladd interviewed with Defendants' Operating Manager ("OM") at its Fairburn, Georgia branch. (FAC ¶ 54.) At the beginning of the interview, without prompting or context, the OM told Ladd that the opening was a "man fill" and asked her, "Why would you want a man's job?" (FAC ¶ 55.) Ladd replied that she was qualified and had the experience to do the job. (FAC ¶ 56.) The OM replied that Ladd "was taking a job away from a man." (FAC

¶ 57.) He then claimed that he could not find her application in Defendants' computer system, so he gave her a paper application, instructed her to complete it and send it to him, and gave her a fax number and telephone number. (FAC ¶¶ 58-59.) Ladd was unable to fax her job application to the number provided by the OM, so she left voicemails for him. (FAC ¶¶ 60-61.) Ladd never received a return phone call or any other communication about her application. (FAC ¶ 61.) Thereafter, Ladd attempted to apply online for open driver positions advertised by Defendants, but she was unable to do so because Defendants' online application system indicated that she already had an application on file. (FAC ¶ 62.) Defendants offered the position for which Ladd interviewed to a less qualified male applicant. (FAC ¶ 63.)

Beyond Ladd, Defendants have failed to hire a class of other female applicants who also applied for driver positions at several branches since at least January 1, 2016 (the "Applicant Class"). (FAC ¶ 64.) During the interview process, these women were asked if they could lift the trash bins and handle the strong odors and getting dirty, they were asked if they could do the job since they seemed "prissy, like girly girls," and they were told that their appearance would distract men from doing their jobs, including one female applicant who was called the "girl with the big booty." (FAC ¶¶ 66-68.) Defendants hired less qualified male applicants for the driver positions sought by the Applicant Class, and Defendants' hiring process resulted in statistically significant hiring shortfalls for females in driver positions. (FAC ¶¶ 69-70.)

Based on these facts, the EEOC asserts that Defendants have engaged and continue to engage in an intentionally discriminatory hiring pattern or practice designed to exclude qualified women from its driver positions and maintain a male-dominated workforce of drivers in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (FAC ¶¶ 71, 72-74.) The EEOC initiated this action pursuant to §§ 706(f) and 707(e) of Title VII, codified at 42 U.S.C. §§ 2000e-5 and 2000e-6, respectively.

### B.   Procedural History

On October 15, 2018, Ladd filed a Charge of Discrimination with the EEOC against "Waste Industries" alleging sex discrimination based on the same facts as above. (FAC ¶ 28; Doc. 16-2 at 2.) On April 25, 2019, the EEOC notified Defendants that it was expanding its investigation of Ladd's allegations to a potential class of individuals who may have been aggrieved by Defendants' policies and practices throughout the Southeastern United States from at least January 1, 2016 (the "Notice of Expansion"). (Doc. 16-3 at 2.) The EEOC requested that Defendants submit documents and information relevant to Ladd's Charge. (*Id.*) On February 23, 2022, the EEOC notified Defendants that, on behalf of Ladd and similarly situated female applicants, it found reasonable cause to believe that Defendants violated Title VII by engaging in certain discriminatory practices (the "Notice of Determination"). (FAC ¶¶ 29-30.) The EEOC invited Defendants to engage in conciliation for the purpose of eliminating the unlawful employment practices and providing appropriate relief to those aggrieved. (FAC ¶ 30.) Conciliation efforts failed, so the EEOC issued Defendants a Notice of

Failure of Conciliation on September 23, 2022. (FAC ¶ 32.) One year later, on September 22, 2023, the EEOC filed a complaint in this Court. (Doc. 1.) On November 9, 2023, the EEOC sought leave to amend the complaint, (Doc. 8), which Defendants did not oppose, (Doc. 9). The FAC was docketed on November 27, 2023. (Doc. 13.) On December 11, 2023, Defendants moved to dismiss the FAC. (Doc. 16; Doc. 16-1, "Def. Brief".) Plaintiff responded in opposition on January 5, 2024, (Doc. 20, "Pl. Resp."), to which Defendants replied on January 31, 2024, (Doc. 25, "Def. Reply.") The motion is now ripe for review.

II.   **DISCUSSION**

In their motion, Defendants seek various forms relief under Rule 12(b)(6), which the Court now attempts to decipher. Their priority appears to be the dismissal of the FAC with prejudice for failure to state a claim. (Doc. 16 at 1.) If the FAC is not dismissed entirely, then any claim arising prior to October 27, 2018, should be dismissed as time barred. (Def. Brief at 4.) In the event the FAC is dismissed without prejudice, Defendants seek the opportunity to have "limited discovery" on the EEOC's class-based allegations before the EEOC is allowed to file a second amended complaint. (Doc. 16 at 1-2.) In the event the FAC survives dismissal at this stage, the factual basis of the claim should nevertheless be limited to events taking place on or after October 27, 2018, and Defendants Waste Industries U.S.A., LLC, TransWaste Services, LLC, and GFL Environmental should be dismissed as parties. (*Id.* at 2.) Defendants also state that they are seeking relief under Rule 12(f), though they do not assert what relief they are

seeking or the reason behind that request. (*Id.* at 1.) The Court addresses each argument in turn.

### A.     Motion to Dismiss the FAC under Rule 12(b)(6)

Under Rule 12(b)(6), the Court is authorized to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The pleading standard required under Rule 8(a)(2) is liberal, requiring only notice pleading—a short and plain statement that gives the defendant fair notice of what the claim is, and the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and move the plaintiff's claims "across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Gilliam v. U.S. Dep't of Veterans Affs.*, 822 F. App'x 985, 989 (11th Cir. 2020).

### 1.     Proper Parties

Defendants seek to have Waste Industries U.S.A., LLC ("WI USA"), TransWaste Services, LLC ("TWS"), and GFL Environmental ("GFL") dismissed

as parties because the EEOC has not alleged facts sufficient to demonstrate that all four Defendants behaved as a single entity. (Def. Brief at 22-25.) To determine whether multiple entities should be treated as a single entity for Title VII purposes, courts look to four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987). The entities must be "'highly integrated with respect to ownership and operations.'" *Id.* (quoting *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726 (N.D. Ala.), *aff'd*, 664 F.2d 295 (11th Cir. 1981)). Here, the EEOC alleges that WI USA (i) is the parent company of TWS and WI Atlanta, which are wholly owned subsidiaries, (ii) maintains centralized control of labor relations with its subsidiaries, (iii) shares policies, procedures, an employee handbook, and human resources employees with its subsidiaries, (iv) created and maintains job descriptions for its subsidiaries, (v) posted job openings for its subsidiaries, (vi) provides payroll and other administrative functions to its subsidiaries, (vii) has interrelated operations, common management, and common financial control with its subsidiaries. (FAC ¶¶ 13-23.) The EEOC further alleges that, at some point, GFL merged with WI USA, continued its business operations, and is therefore the successor in interest to WI USA, TWS, and WI Atlanta for Title VII purposes. (FAC ¶¶ 24, 27.) Defendants argue that these allegations are conclusory and that, in any event, WI USA, TWS, and GFL cannot be liable for the alleged actions of WI Atlanta, which is the only entity that operated and employed individuals at the Stockbridge branch where Ladd applied. (Def. Brief

at 24-25.) The Court disagrees. The facts above, if true, demonstrate that all four Defendants operated as one entity that initiated and implemented the discriminatory hiring practice at issue here. *See Darden*, 143 F. Supp. 3d at 1284 (finding similar allegations sufficient at motion to dismiss stage); *U.S. Equal Emp. Opportunity Comm'n v. Princess Martha, LLC*, No. 8:22-CV-2182-CEH-AAS, 2023 WL 8544223, at *9 (M.D. Fla. Dec. 11, 2023) (finding allegations "more than sufficient" to plausibly allege entities' interrelation where parent (i) shared HR director, employee handbooks, policies with subsidiary, (ii) provided employee benefits to all employees, (iii) managed budget, information systems, supplies, and insurance for subsidiary, (iv) issued job postings and operated hiring procedures for subsidiary; (v) shared mailing address with subsidiaries); *Thornton v. Mercantile Stores Co.*, 13 F. Supp. 2d 1282, 1291–92 (M.D. Ala. 1998) (holding on summary judgment that evidence showed entities were "substantially interrelated" because parent, *inter alia*, (i) handled subsidiary's banking operations; (ii) paid vendors supplying products to subsidiary; (iii) retained control over subsidiary's budget; (iv) made all employment decisions for subsidiary's senior employees; (v) maintained significant ongoing contact with subsidiary's HR managers; (vi) distributed handbook and policies to subsidiary; (vii) operated centralized management information services for subsidiary; (viii) provided legal assistance to subsidiary; (ix) managed subsidiary's benefit programs; (x) provided training for subsidiary employees).

### 2.      Substantive Sufficiency of Pattern or Practice Claims

Title VII prohibits an employer from "fail[ing] or refus[ing] to hire . . . any individual . . . because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). The EEOC may vindicate the rights of a class of similarly situated individuals under this statute through a pattern or practice claim. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 964–65 (11th Cir. 2008). The EEOC may bring a pattern or practice claim when it has "reasonable cause to believe that [the defendant employer] is engaged in a pattern or practice of discrimination." 42 U.S.C. § 2000e-6(a). To succeed on such a claim, the EEOC must "prove more than the mere occurrence of isolated or accidental or sporadic discriminatory acts. It ha[s] to establish by a preponderance of the evidence that . . . discrimination [is] the company's standard operating procedure — the regular rather than unusual practice." *Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, 336 (1977); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1559 (11th Cir. 1986). That is to say, the EEOC "is not required to prove that any particular employee was a victim of the pattern or practice; it need only establish a prima facie case that such a policy existed." *EEOC v. Joe's Stone Crabs, Inc.*, 220 F.3d 1263, 1287 (11th Cir. 2000). To do so, the EEOC may introduce either direct evidence of an employer's intent to discriminate or statistical or anecdotal evidence of the employer's intent to treat a protected class unequally. *Id.* At the motion to dismiss stage, however, the EEOC is not required to establish a prima facie case. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (holding that complaint need not state *prima facie* case to

withstand motion to dismiss). Rather, the EEOC need only state enough facts to establish plausible grounds for relief. *Id.*

Here, Defendants argue that the EEOC's allegations as to the Class Applicants are insufficiently pleaded for two main reasons. (Def. Brief at 4, 15-18.) First, Defendants take issue with the EEOC's failure to identify the members of the Applicant Class, their interviewers, and where and when the interviews were conducted. (*Id.* at 15.) Second, Defendants argue that the EEOC was required to plead specific facts showing that Defendants hired less qualified males for the positions sought by the Applicant Class. (*Id.*) However, the EEOC does not need to allege such facts in the FAC to survive dismissal at this stage. Rather, the EEOC need only allege enough facts to plausibly show that Defendants' regular practice was to fail or refuse to hire female truck drivers because of their sex. And the Court finds that the EEOC has carried this burden. For example, the EEOC alleges that Defendants described the position for which Ladd interviewed as a "man fill," a "man's job," and a job that Ladd would be "taking . . . away from" a man; Defendants questioned other female applications about their ability to do the job based on their sex[1]; and Defendants hired less qualified males for those positions. At the risk of stating the obvious, these

---

[1] Defendants also argue that the EEOC alleges only "three discrete and isolated interview questions" asked to members of the Applicant Class. (*Id.* at 17.) That is an inaccurate characterization of these allegations. A plain reading of the FAC reveals that Defendants made the same or similar discriminatory remarks to all members of the Applicant Class during their interviews. These allegations are in no way limited to only three occasions or only three female applicants.

allegations, if true, more than strongly suggest that Defendants regularly and deliberately choose not to hire females to be truck drivers because of their sex. Moreover, upon Defendants' own admission, the EEOC has stated a plausible disparate treatment claim based on its allegations as to Ladd, (*id.* at 14 n.7, 16), and the EEOC has alleged that Defendants' hiring process has resulted in statistically significant shortfalls in hiring females as truck drivers. At this stage of the litigation, that is enough. *See EEOC v. J & R Baker Farms, LLC*, Civil Action No. 7:14-CV-136 (HL), 2015 U.S. Dist. LEXIS 104821, at *10-11 (M.D. Ga. Aug. 11, 2015) (denying motion to dismiss because EEOC met pleading standard for disparate treatment claim and thus also met pleading standard for pattern or practice claim); *Equal Emp. Opportunity Comm'n v. Darden Restaurants, Inc*, 143 F. Supp. 3d 1274, 1282 (S.D. Fla. 2015) (holding that EEOC sufficiently stated pattern or practice claim for failure to hire because of age based on allegations about two specifically named individuals, comments made to class of unidentified individuals, and existence of statistical disparity in hiring).

Additionally, Defendants argue that the EEOC was required to plead "specific metric[s] or data" to support its allegation that Defendants' hiring process resulted in their employing fewer female truck drivers. (Def. Brief at 15.) Through this argument, Defendants improperly seek to hold the EEOC to the evidentiary standard applicable at the summary judgment stage, not the pleading standard applicable at the motion to dismiss stage. *E.E.O.C. v. Propak Logistics, Inc.*, No. 1:09-CV-311, 2010 WL 3081339, at *5 (W.D.N.C. Aug. 6, 2010) ("[T]he EEOC may prove this pattern or practice of discrimination through

statistical and anecdotal evidence that need not be recited in the complaint.")
(citing *Teamsters*, 431 U.S. at 336-43; *Swierkiewicz*, 534 U.S. at 511). *C.f. Serrano v. Cintas Corp.*, 699 F.3d 884, 892 (6th Cir. 2012) ("Both *McDonnell Douglas* and *Teamsters* provide frameworks through which a plaintiff can *prove* intentional discrimination through circumstantial evidence.") (emphasis added).

### 3.   Temporal Sufficiency of Claims

The EEOC seeks to vindicate the rights of individuals whom Defendants failed to hire "since at least January 1, 2016[.]". (FAC ¶ 71.) Defendants seek to dismiss as time-barred any sex-based failure to hire claims arising before October 27, 2018. (Def. Brief at 4, 20-22.) According to Defendants, the calculus begins on April 25, 2019, when they first received notice of the EEOC's potential pattern or practice claims via the Notice of Expansion. (*Id.* at 21.) The Notice of Expansion functions like a Charge filed by the EEOC. (*Id.*) Charges must be filed within 180 days after the alleged discriminatory employment practice occurred, so any activities outside that window are not actionable. (*Id.*) (citing 42 U.S.C. § 2000e-5(e)). The Notice of Expansion is dated April 25, 2019, and 180 days prior to that date is October 27, 2018. (*Id.*) Therefore, Defendants argue, the EEOC cannot base its pattern or practice claims on any failure to hire that occurred prior to October 27, 2018. (*Id.*) The EEOC responds that the 180-day statute of limitations does not apply to actions brought by the EEOC under § 707. (Pl. Resp. at 19-20.) But even if it did, the EEOC says, it is not clear from the face of the FAC that it is untimely, particularly because the EEOC alleges that Defendants' pattern or practice of sex discrimination was a "continuing violation," and the application of that theory

requires further development of the record. (*Id.* at 17-19.) Defendants reply that the statute of limitations does apply here, and that its alleged sex-based failures to hire cannot constitute a continuing violation. (Def. Reply at 9-13.) The Court will address the statute of limitations issue first, and the continuing violation issue second.

### i.     *Statute of Limitations*

Circuits are split on whether the 180-day statute of limitations applies to actions brought by the EEOC under § 707. *Equal Emp. Opportunity Comm'n v. Army Sustainment, LLC,* No. 1:20-CV-234-RAH-CWB, 2023 WL 6276341, at *4 (M.D. Ala. Sept. 26, 2023). The Eleventh Circuit Court of Appeals has not directly addressed this issue, but district courts in this and other circuits have over at least the last five decades. It is from those decisions which this Court must draw its reasoning and conclusion.

The Court begins with the plain language of 42 U.S.C. § 2000e-6. Section 2000e-6(c) provides that, when bringing a pattern or practice claim, the EEOC must do so in compliance with subsection (e). Subsection (e) provides that the EEOC "shall have authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission[,]" and that "[a]ll such actions shall be conducted in accordance with the procedures set forth in section 2000e-5 of this title." Section 2000e-5(e) provides that "a charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" Some courts have concluded that, based on

this plain language, the 180-day statute of limitations applies to any pattern or practice suit brought by the EEOC and that, consequently, the EEOC cannot base its claims on alleged discrimination that occurred more than 180 days prior to the EEOC's charge date. *See, e.g., E.E.O.C. v. Optical Cable Corp.*, 169 F. Supp. 2d 539, 547 (W.D. Va. 2001) ("Bound as I am by the plain language of the statute, I conclude that the 180-day limitations period of § 2000e-5(e) applies in this case."); *EEOC v. Sears, Roebuck & Co.*, 490 F. Supp. 1245, 1260 (M.D. Ala. 1980) ("This Court is of the opinion that the clear language of § 2000e-6(e) makes the 'procedures' of § 2000e-5 applicable to pattern or practice suits and that the 180-day period set out in § 2000e-5(e) is one of those procedures."); *Equal Emp. Opportunity Comm'n v. CRST Van Expedited, Inc.*, 615 F. Supp. 2d 867, 877-78 (N.D. Iowa 2009) (collecting cases) ("After surveying these district court cases, the court finds the better reasoned authority holds that Title VII generally does not grant the EEOC the power to resurrect otherwise stale claims of unlawful employment discrimination. The plain language of § 2000e–5 contemplates [the time limitation for filing a charge, and] makes no exception for the EEOC, even though it clearly contemplates EEOC enforcement actions."); *Equal Emp. Opportunity Comm'n v. Kaplan Higher Educ. Corp.*, 790 F. Supp. 2d 619, 624 (N.D. Ohio 2011) ("[T]he time limitation in § 706(e)(1) is applicable in this case. . . . Plainly, if a charge is not filed within that time limitation, the EEOC may not act upon it. No exception exists in the statute allowing the EEOC to recover damages for individuals whose claims are otherwise time-barred.").

Other courts have relied on legislative history and policy concerns to eschew strict compliance with the statutory language and to conclude that the 180-day statute of limitations does not apply to EEOC-initiated pattern or practice cases. *See, e.g., E.E.O.C. v. LA Weight Loss*, 509 F. Supp. 2d 527, 535 (D. Md. 2007) ("The language of sections 2000e–5(e) and 2000e–6(e) is not so plain as to warrant the application of § 2000e–5(e)'s limitations period for individual charges to pattern-or-practice claims brought by the EEOC under § 2000e–6[, which] permits the EEOC to remedy systematic violations of Title VII that occur over periods stretching well beyond § 2000e–5(e)'s charge-filing deadline against multiple victims."); *EEOC v. Mitsubishi Motor Mfg. of America, Inc.*, 990 F. Supp. 1059, 1087 (C.D. Ill. 1998) ("By its nature, the Commissioner's charge alleging a pattern or practice of sexual harassment is not filed within [180] days of any particular incident of sexual harassment, because it is not based on an individual charge, but rather on the evidence gathered over a course of time showing a pattern of harassment against many individuals. As a result, there is no way for a court to determine if the Commissioner's charge is 'timely.'").[2]

---

[2] The EEOC also argues that imposing the 180-day statute of limitations "ignores binding precedent[.]" (Pl. Resp. at 19-20) (citing *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 843 (5th Cir. 1975) ("Section 707 does not make it mandatory that anyone file a charge against the employer or follow administrative timetables before the suit may be brought.")). However, the court made that statement in the context of discussing its holding that a private party did not have an unconditional right to intervene in the case. *Allegheny-Ludlum*, 517 F.2d at 843. It is therefore dicta, which is not binding on this Court. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("All statements that go beyond the facts of the case . . . are dicta. . . . And dicta is not binding on anyone for any purpose.").

Upon reviewing these decisions, this Court finds that the plain language of § 2000e-6(e) is clear—the EEOC is bound by the statute of limitations set forth in § 2000e-5(e). *See EEOC v. FAPS, Inc.*, 2014 WL 4798802, at *24 (D. N.J. Sept. 26, 2014) ("Like the majority of the courts that have reviewed this issue, the Court is convinced that Section 706 applies to claims brought by the EEOC."). "The consequence of finding otherwise 'would permit the EEOC to destroy all principles of repose and force employers to defend against zombie-like claims from the distant past.'" *Army Sustainment*, 2023 WL 6276341, at *6 (quoting *CRST*, 615 F. Supp. 2d at 878).

The Court must now decide when the clock began to run, and it appears that there are two options: (a) 180 days prior to the date on which Defendants received the Notice of Expansion, or (b) 180 days prior to the date on which Ladd filed her Charge. There is case law to support both options. *See E.E.O.C. v. Freeman*, No. RWT 09-CV-2573, 2011 WL 337339, at *7 (D. Md. Jan. 31, 2011) ("[T]he EEOC did not properly notify Freeman that it was being investigated for its use of criminal history information in hiring decisions until the EEOC sent Freeman a letter on September 25, 2008 notifying Freeman of the expanded investigation."); *Optical Cable*, 169 F. Supp. 2d at 547 ("The Fourth Circuit has not hesitated to use the date the EEOC notifies the defendant that it is commencing a pattern or practice case against them as the date of 'filing of a charge' for purposes of calculating the two year backpay period of § 2000e-5(g). . . . I do not see why a determination of the date by which 'a charge . . . shall be filed' under § 2000e-5(e) should be any different.") (citing *EEOC v. General Elec. Co.*, 532 F.2d

359, 371 (4th Cir. 1976)); *Army Sustainment*, 2023 WL 6276341, at *7 (concluding that the statute of limitations began to run 180 days prior to the filing of the earliest "representative charge" because EEOC informed defendant that it was basing pattern and practice claims on that charge). As stated previously, Defendants argue that the statute of limitations began to run on October 27, 2018, 180 days prior to their receipt of the Notice of Expansion. Because the EEOC does not challenge this assertion, (*see* Pl. Resp.), and because it is supported by case law, the Court finds that the statute of limitations began to run on October 27, 2018. If that were the end of the inquiry, then the EEOC could not base its pattern or practice claims on any failure to hire that occurred before October 27, 2018.[3]

---

[3] Some courts have interpreted the language of §§ 2000e–5(e) and 2000e–6(e) to mean that the EEOC can act on any *charge* filed within the 180 days before the EEOC notified the defendant of a potential pattern or practice claim. *See E.E.O.C. v. Freeman*, No. RWT 09CV2573, 2010 WL 1728847, at *4 (D. Md. Apr. 27, 2010) ("The Court need not look any farther than the plain language of Section 706(e)(1) to conclude that the class of individuals for whom the EEOC can seek relief is limited to those who could have filed an EEOC charge during the filing period. Section 706(e)(1) clearly bars claims from individuals who failed to timely file charges."); *E.E.O.C. v. FAPS, Inc.*, 2014 WL 4798802, at *24 ("The plain language of Section 706(e)(1) clearly precludes the EEOC from seeking relief for individuals who could not have filed an EEOC charge during the filing period."). Doing so would, in effect, expand the actionable period from 180 to 360 days. The Court disagrees with this interpretation because it is not supported by the plain language of the statutes. When an individual files a charge of discrimination with the EEOC, the only actionable discriminatory acts are those that occurred within 180 days of the filing of that charge. It stands to reason that when the EEOC files a charge, whether literally or by way of officially notifying the defendant of its potential pattern or practice claim, the only actionable discriminatory acts are those that occurred within 180 days of the filing of that charge.

But that is not the end of the inquiry due to the EEOC's continuing violation argument, which the Court now addresses.

### ii.    *Continuing Violation*

The EEOC argues that it may pursue its claims, including those based on failures to hire that occurred outside the statutory period, because Defendants' alleged pattern or practice of failing to hire women for truck driver positions is a "continuing violation." (Pl. Resp. at 18.) "The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Brantley Cnty. Dev. Partners, LLC v. Brantley Cnty., Georgia by & through Chairman & Members of Brantley Cnty. Bd. of Commissioners*, 559 F. Supp. 3d 1345, 1365 (S.D. Ga. 2021) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001); *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006)). In other words, if the continuing violation doctrine applies here, then the EEOC can pursue claims for sex-based failures to hire that occurred prior to October 27, 2018, so long as other allegedly sex-based failures to hire occurred within the statutory period.

In evaluating whether the continuing violation doctrine applies, the Eleventh Circuit "distinguishes between the present consequence of a one[-]time violation, which does not extend the limitations period, and the continuation of that violation into the present, which does." *Hamilton*, 453 F.3d at 1335 (quoting *City of Hialeah v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002)). The prime example of a continuing violation is a hostile work environment claim:

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). At least one court in this Circuit has observed that pattern and practice claims are analogous to hostile work environment claims because they, "unlike discrete acts, 'occur[ ] over a series of days or perhaps years' and 'are based on the cumulative effect of individual acts.'" *Banks v. McInstosh Cnty., Georgia*, No. 2:16-CV-53, 2022 WL 400810, at *12 (S.D. Ga. Feb. 9, 2022) (quoting *Morgan*, 536 U.S. at 115). *See also Steele v. City of Port Wentworth, Georgia*, No. CV405-135, 2008 WL 717813, at *15 (S.D. Ga. Mar. 17, 2008) ("A systemic violation has its roots in a discriminatory policy or practice; so long as the policy or practice itself continues into the limitations period, a challenger may be deemed to have filed a timely complaint."). Courts in many other circuits agree. *See, e.g., Moore v. Chertoff*, 437 F. Supp. 2d 156, 161 (D. D.C. 2006) (rejecting defendant's argument that *Morgan* precludes the application of the continuing violation doctrine because the "plaintiffs have plainly and consistently challenged the promotion policies of the [defendant]" through a pattern and practice claim); *Sharpe v. Cureton*, 319 F.3d 259, 268–69 (6th Cir. 2003) (The category of continuing violations that involve a

longstanding and demonstrable policy of discrimination is not implicated by *Morgan*.); *Equal Emp. Opportunity Comm'n v. Horizontal Well Drillers, LLC*, No. CIV-17-879-R, 2018 WL 3029108, at \*8-9 (W.D. Okla. June 18, 2018) ("In the absence of precedent to the contrary, . . . the EEOC [may] use the continuing-violation exception to Section 706's timely filing requirement for its pattern-or-practice claim.") (citing *Bruno v. W. Elec. Co.*, 829 F.2d 957, 961 (10th Cir. 1987), *overruled on other grounds by Morgan*, 536 U.S. 101); *Grigg v. Union Pac. R.R. Co.*, No. 4:21CV3124, 2023 WL 1864424, at \*3–4 (D. Neb. Feb. 9, 2023); *Coons v. Mineta*, 410 F.3d 1036, 1042 (8th Cir. 2005) (holding, post-*Morgan*, that "systemic" and "ongoing discrimination" may toll the statutory period for filing an administrative charge of employment discrimination); *U.S. E.E.O.C. v. PMT Corp.*, 40 F. Supp. 3d 1122, 1128–29 (D. Minn. 2014); *Torres v. Mineta*, No. CIV.A. 04-0015, 2005 WL 1139303, at \*4 (D. D.C. May 13, 2005) (finding circuit's pre-existing case law on continuing violations still governs in "pattern-or-practice" and "policy-or-practice" cases "insofar as it has not been altered by *Morgan*"); *Kennedy v. City of Zanesville, OH*, 505 F. Supp. 2d 456, 490–92 (S.D. Ohio 2007) (finding continuing violation where plaintiffs alleged county's long-standing policy of denying municipal water services to residents based on race occurred during limitations period).

Other courts have reached the opposite conclusion. *See Freeman*, 2010 WL 1728847, at \*6 ("In this Court's view, the continuing violation doctrine should not be invoked to expand the class of individuals for whom the EEOC can seek relief under Title VII" because "the continuing violation doctrine permits the inclusion

of additional, but otherwise time-barred, *claims*—not the inclusion of otherwise time-barred *parties*.") (emphasis supplied); *Martinez v. Texas Workforce Comm'n – Civil Rights Div.*, 2013 WL 5354579, at *7 (W.D. Tex. Sept. 24, 2013) (finding that a "pattern or practice of refusing to hire job applicants does not constitute a continuing violation . . . because the refusal to hire an applicant . . . is undoubtedly a discrete act of discrimination"); *E.E.O.C. v. Kaplan Higher Educ. Corp.*, 790 F. Supp. 2d 619, 625 (N.D. Ohio 2011) ("Even in a pattern-or-practice case such as this, the discrete decisions to refuse to hire and to terminate employment cannot be linked together to create a continuing violation.") (granting defendant's partial motion to dismiss); *E.E.O.C. v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 659 (E.D. Va. 2008) (declining to apply continuing violation doctrine to save EEOC's time-barred pattern or practice claims because "[t]he EEOC's special statutory mandate does not entitle it to expand substantive rights, such as reviving stale claims that would not otherwise be actionable under Title VII.") (internal quotation marks omitted); *E.E.O.C. v. Bass Pro Outdoor World, LLC*, 884 F. Supp. 2d 499, 524 (S.D. Tex. 2012), *on reconsideration*, 35 F. Supp. 3d 836 (S.D. Tex. 2014), *aff'd sub nom. Equal Emp. Opportunity Comm'n v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791 (5th Cir. 2016), ("As the 300–day period applies to all of the EEOC's claims, any claims for discrete violations occurring outside of that period—including a pattern or practice of failure to hire—must be dismissed."); *Equal Emp. Opportunity Comm'n v. USF Holland, LLC*, No. 3:20-CV-270-NBB-RP, 2021 WL 4497490, at *2 (N.D. Miss. Sept. 30, 2021).

The Eleventh Circuit Court of Appeals has yet to address this issue head-on, but the Court finds *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002), somewhat helpful. In *Joe's Stone Crabs*, the EEOC sued the defendant restaurant for intentional disparate treatment discrimination and unintentional disparate impact discrimination. 296 F.3d at 1269. Specifically, the EEOC argued that the defendant's discriminatory hiring practices deterred four female applicants from applying for the food server position. *Id.* The EEOC argued that these failures to hire constituted a continuing violation. *Id.* The Court rejected this argument, reasoning that the "the failure to hire the claimants because they were women—were discrete, one-time employment events that should have put the claimants on notice that a cause of action had accrued." *Id.* at 1272 (citations omitted). The Court therefore held that the continuing violation doctrine did not allow the EEOC to pursue claims based on failures to hire that occurred outside the statutory period. *Id.* But notably, on multiple occasions, the Eleventh Circuit flagged the fact that the EEOC sued only under § 706 and did not bring a pattern or practice claim under § 707. *Id.* at 1269. In doing so, the Eleventh Circuit seemed to suggest that, had the EEOC brought a pattern or practice claim under § 707, the timeliness analysis may have been different. But without an explicit statement to that effect, this Court is left only to speculate.

Nevertheless, this Court is persuaded that the continuing violation doctrine saves the EEOC's pattern and practice claims from dismissal at this juncture. The Court recognizes that, ordinarily, failures to hire are considered discrete acts. *Morgan*, 536 U.S. at 114. The Court also recognizes that, unlike

individual acts which alone may not be actionable but which together can create a hostile work environment that is actionable, individual failures to hire are actionable when standing alone. But the Court is ultimately persuaded that, like the individual acts which over time create a hostile work environment, the individual failures to hire which occur over time accumulate to become a company's pattern or practice. *C.f. Morgan*, 536 U.S. at 115, 18 (explaining that hostile work environment claims are "different in kind from discrete acts" because "the incidents constituting a hostile work environment *are part of one unlawful employment practice*") (emphasis added). Indeed, the EEOC here is alleging that Defendants' repeated failures to hire women for truck driver positions constitute one unlawful employment practice. Therefore, the Court concludes that the continuing violation doctrine applies. The effect of this application, however, is an analysis for another time. As the EEOC argues, it is not clear from the face of the FAC whether it is untimely, and discovery on this issue is required before any timeliness determination can be made. (Pl. Resp. at 17-18); *see E.E.O.C. v. River View Coal, LLC*, No. 4:11-CV-00117-JHM, 2012 WL 1593138, at *6 (W.D. Ky. May 4, 2012) ("questions of timeliness of the claims is an issue which can only be decided after the facts are developed"); *Optical Cable Corp.*, 169 F. Supp. 2d at 550 (noting that dismissal based on untimeliness was inappropriate where, *inter alia*, no "discovery [had] been developed to the extent that the putative class can be identified").[4]

---

[4] As stated previously, Defendants argue that if the EEOC's FAC is dismissed without prejudice with leave to amend, then Defendants should be permitted to conduct limited discovery on the factual basis for the EEOC's class-

**B.**     **Motion to Strike under Rule 12(f)**

Defendants state in the introductory paragraph of their opening brief that they are also bringing a motion pursuant to Rule 12(f), (Def. Brief at 1), which allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter[,]" Fed. R. Civ. P. 12(f). But Defendants do not state what they wish to be stricken from the FAC. (*See* Def. Brief.) Indeed, as the EEOC points out, Defendants do not devote any portion of their brief to their motion to strike. (Pl. Resp. at 25-26; *see* Def. Brief.) Defendants reply, only in passing in a footnote, that a motion to strike and a motion to dismiss are interchangeable here because "the ultimate result remains the same – dismissal of the EEOC's class-based claims." (Def. Reply at 2 n.1.) But the EEOC is only bringing class-based claims. (*See* FAC.) And while "an entire claim or count may be *dismissed*, portions of a claim or count may be *stricken*." *Hutchings v. Fed. Ins. Co.*, No. 6:08-CV-305-ORL-19KR, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) (emphasis supplied) (comparing Fed. R. Civ. P. 12(b)(6) with Fed. R. Civ. P. 12(f)). Because Defendants did not make any argument for striking anything from the FAC, the Court finds that Defendants abandoned any such motion to strike. *See Griswold v. Ala. Dept. of Indus. Rels.*, 903 F. Supp. 1492, 1501 (N.D. Ala. 1995) ("The court considers issues raised but not briefed abandoned by the Defendants."). And, in any event, the Court has fully

_____

based allegations before the EEOC may file a second amended complaint. (Def. Brief at 19.) Because the Court does not find that the EEOC must amend its FAC, the Court will not address this request.

addressed Defendants' arguments for the dismissal of the EEOC's pattern and practice claims under Rule 12(b)(6), so the Court sees no need to address the matter further through the lens of a motion to strike.

**III.**    **<u>CONCLUSION</u>**

For the following reasons, the Court **RECOMMENDS** that Defendant's Motion to Dismiss, (Doc. 16), be **DENIED**.

**SO RECOMMENDED** May 28, 2024.

J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE